UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CAROLYN MASON, as Parent and Natural
Guardian of A.D., and CAROLYN MASON,
Individually,

                Docket No.: 22-cv-09336 (JHR)

        *Plaintiff(s)*,

   -against-

DAVID C. BANKS, in his Official Capacity,
as the Chancellor of the New York City
Department of Education, and the NEW YORK
CITY DEPARTMENT OF EDUCATION,

        *Defendants*.
--------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
<u>FOR SUMMARY JUDGMENT</u>**

        Respectfully Submitted,

        Daniela Jampel (DJ-0925)
        Ashleigh C. Rousseau, Esq. [5801923]
        *Attorneys for the Plaintiff(s)*
        Brain Injury Rights Group, Ltd
        300 East 95th Street, Suite 130
        New York, New York 10128
        ashleigh@pabilaw.org
        daniela@pabilaw.org

## TABLE OF CONTENTS

POINT I.    DOE DID NOT OFFER A.D. A FAPE DURING THE 2020-2021 SY ...............10

    A. The March 2021 DOE IEP Did Not Provide a FAPE Because it Did Not Account for A.D.'s Severe and Life-Threatening Airborne Allergies .............................11

    B. The March 2021 DOE IEP Did Not Provide a FAPE Because the Peer Grouping Was Not Appropriate ....................................................................................15

POINT II.   EVEN IF A.D.'S IEP PROVIDED A FAPE, DOE DID NOT MEET ITS BURDEN TO ESTABLISH THAT THE PROPOSED SCHOOL LOCATION COULD IMPLEMENT THE IEP....................................................18

POINT III. iBRAIN WAS AN APPROPRIATE PLACEMENT FOR A.D., AND THE BALANCE OF EQUITIES FAVOR THE PARENTS..........................................19

CONCLUSION ...........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

Page No.

**CASES**

*A.S. v. Trumbull Bd. of Educ.*
414 F. Supp. 2d 152 (D. Conn. 2006) ....................................................................11

*Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*
281 F. Supp. 2d 710 (S.D.N.Y. 2003) ..................................................................10

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*
458 U.S. 176, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982) ....................................2, 7

*Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*
990 F.3d 152 (2d Cir. 2021) ..................................................................................9

*Cerra v. Pawling Cent. Sch. Dist.*
427 F.3d 186 (2d Cir. 2005) ..................................................................................2

*D.C. ex rel. E.B. v. New York City Dep't of Educ.*
950 F. Supp. 2d 494 (S.D.N.Y. 2013) ........................................................11, 12, 18

*F.O. v. New York City Dep't of Educ.*
976 F. Supp. 2d 499 (S.D.N.Y. 2013) ....................................................................3

*Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*
510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993) ..........................................4

*Frank G. v. Bd. of Educ. of Hyde Park*
459 F.3d 356 (2d Cir. 2006) ............................................................................2, 3, 5

*G.S. v. N.Y.C. Dep't of Educ.*
No. 15-CV-5187, 2016 U.S. Dist. LEXIS 127473 (S.D.N.Y. Sep. 19, 2016) ..........16

*J.C. v. New York City Dep't of Educ.*
643 F. App'x 31 (2d Cir. 2016) ..............................................................................16

*Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*
550 F. Supp. 2d 420 (S.D.N.Y. 2008) ..................................................................10

*K.T. v. City Sch. Dist. of New Rochelle*
2018 U.S. Dist. LEXIS 56564 (S.D.N.Y. 2018) ......................................................4

*L.C. v. N.Y.C. Dep't of Educ.*
2016 U.S. Dist. LEXIS 120361 (S.D.N.Y. Sep. 6, 2016) ........................................16

*L.K. v. Dep't of Educ. of the City of New York*
No. 09-CV-2266 RMM LB, 2011 WL 127063 (E.D.N.Y. 2011) ............................14

*Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*
397 F.3d 77 (2d Cir. 2005) ..............................................................................10, 11

*M.H. v. New York City Dep't of Educ.*
685 F.3d 217 (2d Cir. 2012) ..............................................................................9, 10

*M.O. v. New York City Dep't of Educ.*
  793 F.3d 236 (2d Cir. 2015) ..................................................................4, 12, 14

*Mrs. B. v. Milford Bd. of Educ.*
  103 F.3d 1114 (2d Cir. 1997) .............................................................................5

*Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*
  145 F.3d 95 (2d Cir. 1998) ..................................................................................5

*R.E. v. New York City Dep't of Educ.*
  694 F.3d 167 (2d Cir. 2012) ...........................................................................3, 5

*S.Y. v. New York City Dep't of Educ.*
  210 F. Supp. 3d 556 (S.D.N.Y. 2016) ........................................................3, 4, 5, 10

*Scott ex rel. C.S. v. New York City Dep't of Educ.*
  6 F. Supp. 3d 424 (S.D.N.Y. 2014) ....................................................................10

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*
  752 F.3d 145 (2d Cir. 2014) ...............................................................................7

*Walczak v. Fla. Union Free Sch. Dist.*
  142 F.3d 119 (2d Cir. 1998) .....................................................................2, 3, 17

*Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*
  945 F. Supp. 501 (E.D.N.Y. 1996) .....................................................................10

**STATUTES**

20 U.S.C. § 1400, *et seq.* ........................................................................................1

20 U.S.C. § 1400(d)(1)(A) .....................................................................................2

20 U.S.C. § 1412(a)(3) ...........................................................................................3

20 U.S.C. § 1412(a)(5)(A) ......................................................................................3

34 C.F.R. § 300.114(a)(2)(i) ..................................................................................3

34 C.F.R. § 300.304(c)(4) ......................................................................................3

34 C.F.R. § 300.304(c)(6) ......................................................................................4

N.Y. Comp. Codes R. & Regs. tit. 8 § 200. 1(kk)(2)(i) (1997)...........................3

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1 *et seq.* ...........................................3

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(5) .............................................4

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(ix) .......................................4

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii) ......................................3

N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv) ................................15

N.Y. Educ. Law § 4402(1)(b)(1) (McKinney) .................................................3, 17

N.Y. Educ. Law § 4404(1)(c) (McKinney) ...............................................4, 5, 10

**PRELIMINARY STATEMENT**

Plaintiff CAROLYN MASON, as Parent and Natural Guardian of A.D., and CAROLYN MASON, individually, submit this memorandum of law in support of Plaintiff's motion for summary judgment under Fed. R. Civ. P. 56. Plaintiffs commenced this action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, and seek an order reversing the underlying administrative decision issued by New York State Review Officer Hauge because that decision erroneously found that the Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("DOE") provided a free appropriate public education ("FAPE") to Plaintiff-Student A.D. for the 2021-2022 school year ("SY"). An independent judicial review of the underlying administrative record shows that DOE's IEP for the 2021-2022 SY was inadequate and did not provide A.D. with a FAPE.

Specifically, the IEP ignored A.D.'s health management because it omitted information about A.D.'s severe, life-threatening, airborne allergies to seafood and eggs, and his severe and life-threatening contact allergy to latex. Further, the proposed classroom placement of A.D. was inappropriate, because those classes were primarily for students with highly intensive behavioral needs related to their classification of autism and would be unsafe for A.D. because of his visual impairment and inability to sense and remove himself from danger. Finally, even if the IEP was sufficient, the IEP did not provide for an extended school day, and there was insufficient time in the regular school day to accommodate A.D.'s extensive individualized therapy and allow A.D. time to learn.

In the underlying administrative proceedings, Impartial Hearing Officer Farago erroneously concluded DOE provided A.D. with a FAPE, which the State Review Officer ("SRO") upheld. IHO Farago also found that iBRAIN was an appropriate placement for A.D. for the 2021-

1

2022 SY and that the balance of equities favored the parents. Affirming that a FAPE was provided, SRO Hauge did not reach this issue.

Plaintiff asks this Court to enter an Order: (1) reversing SRO Hauge's finding that the DOE provided A.D. with a FAPE for the 2021-2022 SY; (2) finding iBRAIN an appropriate placement for A.D. during the 2021-2022 SY; (3) directing DOE to fund A.D.'s placement at iBRAIN during the 2021-2022 SY per the tuition and transportation contracts executed by the Parent. In the alternative, the Plaintiff respectfully requests an Order directing DOE to fund A.D.'s placement for the 2021-2022 SY at iBRAIN, as the IHO found iBRAIN to be appropriate and that the equitable considerations weighed in favor of the Parent-Plaintiff.

## **LEGAL FRAMEWORK**

Congress enacted the IDEA with the goals of: (1) promoting the education of children with disabilities by ensuring that they receive an education that adequately addresses their needs, and (2) protecting the rights of disabled students and their parents. *See* 20 U.S.C. § 1400(d)(1)(A)-(B); *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206–07, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982). The IDEA seeks to ensure that state and local governments provide all disabled children with a FAPE, which must be "reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363 (2d Cir. 2006), quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998). For the school district to provide a student with a FAPE, it must (a) comply with the procedural requirements outlined in the IDEA and (b) develop an IEP for the student that is reasonably calculated to enable the student to receive educational benefits. *See Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07; *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005). The recommended program for the student

must also be provided in the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A); 34 C.F.R. § 300.114(a)(2)(i).

A student's IEP is reviewed annually and includes a detailed description of the student's current educational performance, annual and short-term educational goals, and specific instructional methods and related services to enable the student to achieve those goals. *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556 (S.D.N.Y. 2016). In New York City, a student's IEP is formulated by a Committee on Special Education ("CSE"), provided by the DOE, which is a team of parents, educators, and specialists responsible for examining the student's current performance and needs, and determining an education program that will provide that student with a FAPE. N.Y. Educ. Law § 4402(1)(b)(1) (McKinney); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 175 (2d Cir. 2012). A CSE generally must consider several factors in developing the student's IEP, including (1) academic achievement and learning characteristics; (2) social development; (3) physical development; and (4) managerial or behavioral needs." *Frank G.*, 459 F.3d at 363, quoting *Walczak*, 142 F.3d at 123 (citing N.Y. Comp. Codes R. & Regs. tit. 8 § 200.1(kk)(2)(i) (1997)); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1 *et seq*. The IDEA specifies that a disabled student's IEP determinations may not rely on the student's disability classification but must be based on the student's specific and unique educational needs. *See* 20 U.S.C. § 1412(a)(3); *F.O. v. New York City Dep't of Educ.*, 976 F. Supp. 2d 499, 525 (S.D.N.Y. 2013).

In evaluating the student for the creation of his IEP, a CSE must assess the student in all areas related to the student's suspected disability, such as health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(vii); *see also* 34 C.F.R. § 300.304(c)(4). In addition, the student's evaluation must be comprehensive enough to identify

all his special education needs, whether or not they are commonly linked to the student's identified disability category. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(6)(ix); 34 C.F.R. § 300.304(c)(6); *K.T. v. City Sch. Dist. of New Rochelle*, 2018 U.S. Dist. LEXIS 56564 (S.D.N.Y. 2018). When reevaluating a student at annual IEP meetings, the CSE must review the existing evaluative data and determine whether additional evaluative data is needed. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(5).

When parents are dissatisfied with the district's IEP determinations for their child and believe that the DOE denied their child a FAPE, the IDEA allows them to unilaterally place their child in a private school and seek tuition reimbursement from their local school district. *S.Y.*, 210 F. Supp. 3d 556 (citing *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (per curiam)). The framework generally used in administrative proceedings to determine whether parents are entitled to reimbursement from the district is known as the *Burlington/Carter* test. Three prongs of the Burlington/Carter test must be established for the Court to order reimbursement: (1) the educational program offered by the school district did not offer the student a FAPE ("Prong I"), and (2) the private school alternative selected by the parents is appropriate to meet the student's needs ("Prong II"), and (3) a balancing of the equitable considerations favors reimbursement to the parents ("Prong III"). *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993). Under N.Y. Educ. Law § 4404(1)(c) (McKinney)), the initial burden of proving the adequacy of the school district's IEP is placed on the school district.

If the school district fails to prove that they offered the student a FAPE, the parents then bear the burden of proving that their unilateral private school placement was appropriate and that a balancing of equities weighs in their favor. *S.Y.*, 210 F. Supp. 3d 556, citing *R.E.*, 694 F.3d

at 184–85 (footnote omitted); N.Y. Educ. Law § 4404(1)(c)). After an initial administrative hearing in front of an IHO on the matter, either party may appeal the decision of the IHO to the SRO.

Subsequently, if either party is not satisfied with the decision of the SRO, that party may take action in state or federal Court for further review. *S.Y.*, 210 F. Supp. 3d 556 (citation omitted). The state or federal court is then responsible for deciding whether the school district's proposed IEP for the student is reasonably calculated to allow the student to receive educational benefits and, if not, whether the parents' choice of private school placement was appropriate. *Id*. The criteria for determining whether the unilateral placement was appropriate are essentially identical to the criteria for the appropriateness of the school district's IEP: whether it is reasonably calculated to enable the student to receive educational benefits. *See Frank G.*, 459 F.3d at 364. As for Prong III, as IHO De Leon states in IHO 189827, equitable considerations generally support tuition reimbursement absent evidence that the parents failed to cooperate in the IEP development or otherwise engaged in conduct that precluded the IEP development. [R 46].

While district courts must generally give "due weight" to the findings of administrative officers with more specialized knowledge of educational policy, deference need not be given to the underlying administrative officers when the issues involve interpreting the statutory provisions of IDEA. *Muller on Behalf of Muller v. Comm. on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 101 (2d Cir. 1998) (holding that whether a child qualifies as having a disability under IDEA involved an interpretation of the IDEA and the definition of "emotional disturbance" under federal and New York State regulations–a legal determination for the Court that deserved no deference to the administrative agencies); *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114 (2d Cir. 1997) ("due weight" that is usually given to the findings of administrative proceedings is not

implicated where the issues are matters of law, specifically interpretations of the requirements of the IDEA).

## **STATEMENT OF FACTS**

At the time of the underlying administrative proceedings, A.D. was a thirteen-year-old (13) boy with an acquired brain injury that had resulted in severe global impairments and delays. [R 8]. He has been diagnosed with cerebral palsy, cortical visual impairment ("CVI"), spastic quadriplegia, and a seizure disorder. [R 18]. Because of A.D.'s CVI diagnosis, he is legally blind. [*Id.*]. A.D. is also nonverbal, non-ambulatory, and highly sensitive to noise. [R 66]. He is medically fragile and does not have the reserved capacity to handle any stressors, including exposure to viruses and other illnesses. [R 597].

These impairments adversely affect A.D.'s cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem-solving, sensory, perceptual, and motor abilities, psychosocial behavior, physical functions, information processing, and speech. [R 8]. These global impairments, delays, and deficits likewise adversely affect A.D.'s educational abilities and performance. A.D. is eligible for special education services under the disability classification of traumatic brain injury ("TBI"). [*Id.*].

A.D. is non-ambulatory and relies on a wheelchair for mobility. [R 8-9, R 18]. A.D. depends on adult support for all activities of daily living. [R 8, R 18, R 30, R 66, R 597]. While A.D. is nonverbal, he is making progress in communication using his assistive technology ("AT"), augmentative and alternative communication ("AAC") devices, and related services. [R 30]. He also communicates through facial expressions and limited vocalization. [R 493-494]. A.D. requires an intensive level of individualized support, adaptations, and modifications. [R 417, R 421, R 425,

R 441]. A.D. presents with highly intensive management needs requiring a high degree of individualized attention and intervention throughout the school day. [*Id.*, R 497].

Besides these physical disabilities, A.D. also suffers from severe, life-threatening allergies to eggs, fish, and latex (with the allergies to eggs and fish being airborne) and seizures triggered by noise and light. [R 14, R 597].

Since A.D. is a student with a disability, and a resident of New York City, DOE must provide him with a FAPE under the IDEA each school year. 20 U.S.C. § 1400, *et seq.* A FAPE is offered to a disabled student when the school district complies with the procedural requirements of the IDEA by developing an IEP that is reasonably calculated to enable the student to receive educational benefits. *Board of Educ. of Hendrick Hudson Central School Dist., Westchester County*, 458 U.S. at 206–07; *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151, 160 (2d Cir. 2014).

At iBRAIN, A.D.'s education and health management services were executed under an IEP that iBRAIN created. A.D. has attended iBRAIN since the 2018-2019 SY. The iBRAIN IEP for the 2020-2021 SY can be found within the certified record. [ECF No. 15 at R 492-R 526]. The iBRAIN IEP is comprehensive and includes information about A.D.'s educational and health needs [R 507-509]. For example, A.D.'s life-threatening allergy to fish, eggs, peas, and latex was explicitly identified and addressed with an emergency care plan, including monitoring medication (such as an EpiPen) and replacing it when it expired. [R 508-509].

On March 23, 2021, the DOE's Committee on Special Education ("CSE") convened for its annual review of A.D.'s DOE IEP (the DOE IEP can be found at [ECF No. 15 at R 527-R 564]). The March 2021 CSE recommended a 6:1+1 (*i.e.*, six students with one paraprofessional and one nurse) special class placement in a non-specified DOE specialized school for 35 periods per week. In addition, the March 2021 CSE recommended sixteen hours a week of related services: three 60-

minute sessions per week of individual occupational therapy ("OT"), five 60-minute sessions per week of individual physical therapy ("PT"), five 60-minute sessions per week of individual speech-language therapy, and three 60-minute sessions per week of individual vision education services. The CSE further recommended assistive technology described as "switch and mount management needs" and one 60-minute session of individual assistive technology services per week. The CSE also recommended full-time individual school nurse services daily and the support of an individual health paraprofessional to assist with the student's feeding, ambulation, and safety. The March 2021 IEP also identified support for school staff, including 2-person transfer training, seizure safety training, assistive technology training, vision education training, G/J tube training, and allergy safety and awareness training. The CSE also recommended an "extended school year" ("ESY") so that A.D. would receive services during the summer months through the end of June. On June 15, 2021, DOE notified plaintiffs that the recommended program for A.D. would be at P.S. 66 in Brooklyn, New York.

On June 23, 2021, Plaintiff-Parent Carolyn Mason sent a letter notifying the district that she rejected the recommended program and placement for the 2021-2022 SY and intended to keep A.D. at iBRAIN and seek public funding. [R 9]. Mason initiated a due process complaint on July 6, 2021, alleging that DOE had failed to provide A.D. with a FAPE for the 2021-2022 SY. [R 408-412]. On November 22, 2021, IHO Farago signed an Interim Order on Pendency, directing that A.D. was entitled to remain at iBRAIN during the proceeding. [R 230]. The hearing concluded on March 15, 2022, an FOFD was issued on April 23, 2022. [R 28-56]. IHO Farago found that the DOE's IEP offered a FAPE during the 2021-2022 SY. The IHO also found that A.D.'s placement at iBRAIN during the 2021-2022 ESY was appropriate and that the balance of the equities favored

the parents. Yet IHO Farago denied Mason's request for reimbursement for A.D.'s tuition and transportation costs. [R 48].

Plaintiff appealed IHO Farago's FOFD to the New York State Office of State Review on June 2, 2022. [R 59]. On July 1, 2022, SRO Carol H. Hauge decided Appeal No. 22-064. [R 6-26]. SRO Hauge erroneously found that the record supported IHO Farago's finding that "the March 2021 IEP was reasonably calculated to enable the student to receive an educational benefit considering his unique circumstances and that the parent's allegations about the assigned school's capacity to implement the March 2021 IEP were speculative. [R 25]. SRO Hauge did not reach whether the private educational services provided by iBRAIN were appropriate or whether the equitable considerations favored the family. *Id.* This federal action to review SRO Decision No. 22-064 followed.

## <u>LEGAL STANDARD</u>

In a district court proceeding under the IDEA, the parties and the Court typically style decision as a ruling on a motion for summary judgment, but "the procedure is in substance an appeal from an administrative determination, not a summary judgment motion." *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021); *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). Therefore, the district court "engages in an independent review of the administrative record and make[s] a determination based on a preponderance of the evidence." *Board of Education of Yorktown Central School District*, 990 F.3d at 165; *M.H.*, 685 F.3d 217.

The motion serves as a pragmatic procedural mechanism for reviewing a State's compliance with the procedures outlined in the IDEA in developing an IEP and determining whether a challenged IEP is reasonably calculated to enable a child to receive educational

benefits." *S.Y.*, 210 F. Supp. 3d at 565; *M.H. v. N.Y.C. Dep't of Educ.*, at 217; *See also*, *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 83 (2d Cir. 2005). Accordingly, a motion for summary judgment in an IDEA case often triggers more than an inquiry into possible disputed issues of fact. *S.Y.*, 210 F. Supp. 3d at 565, *see Lillbask ex rel. Mauclaire*, 397 F.3d at 83. Rather, in such cases, the Court conducts an independent judicial review and bases its decision on the preponderance of the evidence. *Scott ex rel. C.S. v. New York City Dep't of Educ.*, 6 F. Supp. 3d 424, 435 (S.D.N.Y. 2014).

Courts have noted that "[s]ummary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions," but that "[t]he inquiry…is not directed to discerning whether there are disputed issues of fact, but whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." *Jennifer D. ex rel. Travis D. v. New York City Dep't of Educ.*, 550 F. Supp. 2d 420, 429 (S.D.N.Y. 2008); *Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 508 (E.D.N.Y. 1996); *see also Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*, 281 F. Supp. 2d 710 (S.D.N.Y. 2003).

## ARGUMENT

### POINT I.   DOE DID NOT OFFER A.D. A FAPE DURING THE 2020-2021 SY

In judicial proceedings challenging the sufficiency of an IEP, the school district must establish that the IEP offered the subject student a FAPE. N.Y. Educ. Law § 4404(1)(c). For these reasons, DOE has not met its burden.

A.    **The March 2021 DOE IEP Did Not Provide a FAPE Because it Did Not Account for A.D.'s Severe and Life-Threatening Airborne Allergies**

As the Second Circuit has noted, a FAPE under the IDEA must accommodate a child's health issues, as the IDEA's "broad language suggests that Congress did not intend to exclude from consideration any subject matter—including safety concerns—that could interfere with a disabled child's right to receive a free appropriate public education." *A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp. 2d 152, 178 (D. Conn. 2006) (citing *Lillbask ex rel. Mauclaire*, 397 F.3d 77). Because the March 2021 DOE IEP ignored A.D.'s medical fragility, most notably his severe and life-threatening allergies to seafood, eggs, and latex, the DOE did not satisfy its obligation to provide a FAPE to A.D. [R 14].

To accommodate A.D. and keep him safe at school, iBRAIN specifically included information about A.D.'s allergies in his iBRAIN IEP. [R 508-509]. The iBRAIN IEP states that "[A.D.] has food (airborne for fish and eggs, sweet peas) and latex allergies; and has EpiPen as needed/ordered by MD." *Id.* Five specific interventions are set out to "obtain allergy/anaphylaxis plan; develop and implement emergency care plan; use of 1:1 nurse and paraprofessional; provide in-service for school staff about allergic reaction/anaphylaxis and EpiPen; monitor medication to make certain that expired medication is replaced." *Id.* While the DOE IEP largely incorporates the iBRAIN IEP, the DOE IEP is utterly silent regarding information about A.D.'s severe and life-threatening allergies. [R 19].

This is not a coincidence. Plaintiff submits that the DOE intentionally omitted any mention of A.D.'s severe allergies from his IEP to avoid its responsibilities under the IDEA and Second Circuit jurisprudence. The plaintiff-student in *D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 950 F. Supp. 2d 494 (S.D.N.Y. 2013) also had a severe seafood allergy, and his IEP required a seafood-free environment. 950 F. Supp. 2d at 503. This Court found the DOE did not provide a

11

FAPE to that student because the school DOE placed him in was not, in fact, seafood-free. 950 F. Supp. 2d at 513. Subsequently, the Second Circuit in *M.O.,* citing *D.C.,* opined, "it is not speculative to conclude that an IEP recommending a seafood-free environment, for a child with a life-threatening seafood allergy, could not be implemented at a proposed school that was not seafood-free." *M.O.*, 793 F.3d at 244. Thus, had A.D.'s allergies been written into his IEP, Second Circuit jurisprudence would require that the DOE would provide A.D. with a seafood-free environment (which it cannot). Plaintiffs submit that to avoid the result governed by *D.C.* and *M.O.*, *supra*, the DOE has a systematic policy to intentionally omit allergies–specifically, life-threatening, airborne allergies–that the DOE cannot accommodate in its public schools.

But regardless of whether this omission was intentional, the absence of A.D.'s allergies in his IEP denied him a FAPE because acknowledging and accommodating those allergies is essential to providing a safe environment for A.D. to learn. Had the allergies been properly reflected in his IEP, DOE had an obligation to provide A.D. with an environment free of his allergens. *D.C. ex rel. E.B.*, 950 F. Supp. 2d at 513; *M.O.*, 793 F.3d at 244. As further set forth below, the proposed location was not a seafood- or egg-free school, and thus could not provide A.D. a FAPE. DOE should not be permitted to engage in this sleight-of-hand—a sleight of hand that puts severely disabled children like A.D. at substantial risk of severe illness–to circumvent its federal obligations.

SRO Hauge incorrectly concluded that omitting A.D.'s severe and life-threatening allergies from the IEP was inconsequential because DOE recommended a 1:1 nurse and the March 2021 nursing referral. [R 21]. But the Nursing Referral (found in the record [ECF No. 15, at R 461-R 462]) does not ensure that A.D. would be placed in a safe environment because nowhere in the Nursing Referral does it state what A.D. is allergic to. Under "Comments," the Referral states,

"Epi-pen for anaphylaxis to various allergens." [R 461]. The CO Comments made on March 23, 2021, state: "student has…significant airborne allergies requiring 24/7 care." [R 462]. But there is no mention of what these allergens are! Is it peanuts? Gluten? Lactose? Does A.D. require an EpiPen for these allergies or other ones? Is he allergic to bee stings? No one would know **because neither the IEP nor the Nursing Referral states A.D.'s actual allergies**. A.D., who is nonverbal and legally blind, cannot possibly be expected to educate the surrounding adults on how to keep him safe. We cannot expect the assistant principal of the proposed school to know the allergy status of every single child, and it is implausible that she would know to inform a nurse of the A.D.'s allergies and their severity. The proposed school has no on-site 1:1 nurses [R 314], so any nurse assigned to A.D. would be coming from an outside agency and may not know the daily routines of the school, including whom to go to with questions about any given student's care. How is a nurse supposed to ensure that A.D. is in an allergen-free environment when neither the IEP nor the Nursing Referral shows what those allergens are?

Although the current school administration and A.D.'s current teachers may know about the allergies, future administrators and teachers (or even a substitute teacher nurse filling in if A.D.'s regular teacher or nurse is sick) may not be so informed. But even if Plaintiff's IEP did mention these allergies, the proposed school cannot meet that standard. Dana Miranda, the assistant principal at P.S. 66 (DOE's proposed location for A.D.), testified that she was unaware of any other students in the school with a seafood or egg allergy. [R 304-R 306]. The best she could offer is that "everyone at the school, the gen-ed school, would be informed, as well, that we have a student with seafood allergies." [R 305]. Because there were no other students at the school with such a severe allergy, and because Ms. Miranda had never had to implement a policy that restricted what foods could be brought into the building, Ms. Miranda's "plan" of how to

accommodate A.D.'s severe allergies was entirely speculative and, in fact, is the type of retrospective evidence that the IHO, SRO, or this Court is prohibited from considering. *R.E.*, 694 F.3d at 188 ("an IEP must be evaluated prospectively as of the time it was created. Retrospective evidence that materially alters the IEP is not permissible.") Overall, the DOE "plan" to keep A.D. safe in school falls far short of what A.D. is entitled to under the IDEA and by the Second Circuit as discussed in *M.O. v. N.Y.C. Dep't of Educ.*, *supra*: an environment free of seafood and eggs, and no contact, no matter how incidental, with latex, which is what A.D. is entitled to under the IDEA.

Thus, it was clearly erroneous for SRO Hauge to find that the nursing referral ameliorated the complete omission of A.D.'s allergies from A.D.'s IEP. Further, SRO Hauge's reliance on *L.K. v. Dep't of Educ. of the City of New York*, No. 09-CV-2266 RMM LB, 2011 WL 127063 (E.D.N.Y. January 13, 2011) is also misplaced. L.K. was a student with a severe allergy to citrus fruit, which L.K.'s IEP omitted to mention. Although the district court found it "troublesome that a critical medical alert was left out of" L.K.'s IEP, the district court found that L.K. could receive a FAPE in the school she was presently in because the administration and staff all knew L.K. and knew of her allergy. 2011 WL 127063, at *15. In this action, however, DOE proposes moving A.D. to a completely new school, where no one will be familiar with A.D. or his particularized health needs, without including those in his IEP or sufficiently describing his allergy to the Nursing Referral. It is not reasonable to expect that a brand-new school would be equipped to handle A.D.'s particularized medical needs, especially given that those needs are not adequately recorded in either the IEP or the nursing referral.

By failing to address A.D.'s severe and life-threatening airborne allergies adequately and placing A.D. at a seafood- and egg-free school, DOE failed to offer A.D. a FAPE. As a result, it is

unsurprising that Plaintiff-Parent Mason refused to enroll her son in a school that could not guarantee it would be free of seafood and eggs, to which her son has severe, life-threatening, and airborne allergies, and instead kept him at iBRAIN, the safe and educational environment that he had been in since 2018.

**B.    The March 2021 DOE IEP Did Not Provide a FAPE Because the Peer Grouping Was Not Appropriate**

The New York State regulations implementing the IDEA and governing special education regulations mandate that if a student's IEP requires him to be placed in a special education class, "the size and composition of a class shall be based on the similarity of the individual needs of the students according to (i) levels of academic or educational achievement and learning characteristics; (ii) levels of social development; (iii) levels of physical development; and (iv) the management needs of the students in the classroom. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv).

The March 2021 DOE IEP recommends that A.D. be placed in a 6:1:1 classroom (six students, one paraprofessional, and one teacher). In his FOFD, IHO Farago erroneously downplayed the dangers of sending A.D. to a 6:1:1 class in a D75 school, calling it "prospective speculation" and a "vague and categorical concern." [R 45]. SRO Hauge incorrectly agreed. [R 23]. Plaintiff respectfully contends that SRO Hauge relied on inapplicable case law to find that Plaintiff's concerns were "impermissibly speculative." In *M.O.*, 793 F.3d 236, the Second Circuit held that Parents can prospectively challenge the proposed school so long as the prospective hallenge is not "speculative." *M.O.*, 793 F.3d at 244. Thus, "the [*M.O.*] court drew a distinction between conclusory claims that the school simply *would not* implement an IEP and claims that the school *could no*t implement an IEP." *W.W. & D.C. v. New York City Dep't of Educ.*, 160 F. Supp.

3d 618, 626 (S.D.N.Y. 2016) (emphasis in the original). The former claim does not allege that the local school district denied a FAPE.[1]

But that is not this action. The plaintiffs have never argued against P.S. 66 providing a 6:1:1 class placement for A.D. or A.D. being placed in such a class. Instead, Plaintiff asserts (and has asserted throughout) that because of A.D.'s particular disabilities and needs, DOE 6:1:1 classes are unsafe for A.D. and would not allow him the opportunity to progress academically. Far from being "speculative," the Plaintiff's concerns are factually grounded in the testimonial evidence of Tiffany Semm, the Director of Special Education at iBRAIN. In the underlying administrative hearing, Ms. Semm testified that based on her familiarity with A.D. and knowledge of his needs and based on her experience with DOE schools and working with students on the autism spectrum, a 6:1:1 classroom in a District 75 school was not appropriate or safe for someone like A.D. [R 361-364, R 370-372]. Ms. Semm testified that the students typically placed in 6:1:1 settings in DOE schools are those who "need [a] high level of support," need "additional supports in the area of emotional and behavioral…supports and concerns," have "significant behavioral…needs," including "self-injurious behaviors," and require high support for behavior intervention [R 365-366, R 369-370].

---

[1] All of the other cases cited by SRO Hauge for this point have similarly non-applicable fact patterns. *See G.S. v. N.Y.C. Dep't of Educ.*, No. 15-CV-5187, 2016 U.S. Dist. LEXIS 127473 (S.D.N.Y. Sep. 19, 2016) (it was impermissibly speculative to allege that the school would not place the student in the appropriate grouping when the school could do so); *J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) (the child was not denied a FAPE because the parent alleged that the proposed school location did not contain the appropriate classroom grouping); *L.C. v. N.Y.C. Dep't of Educ.*, 2016 U.S. Dist. LEXIS 120361 (S.D.N.Y. Sep. 6, 2016) (speculative to allege that the proposed school would not be able to implement the student's IEP). *See generally W.W. and D.C.*, 160 F. Supp. 3d at 627 ("*M.O.* leads to two conclusions. First, plaintiffs may prospectively challenge a proposed placement school's capacity to implement an IEP without first enrolling their child in that school…Second, the school district bears the burden of showing that the proposed placement school has the capacity to implement the child's IEP.").

In contrast, A.D. does not have any behavioral needs and does not have a behavioral intervention plan. [R 88; R 368]. Thus, grouping A.D. with students placed in a 6:1:1 setting mainly because of their behavioral needs is inappropriate. *See generally* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(2)(i)-(iv). *Cf. Walczak*, 142 F.3d 119 (finding an educational placement appropriate because the children had sufficiently similar social, educational, and behavioral disabilities). Nor is such a grouping safe for A.D. When asked whether "it is appropriate to group [A.D.] in a class of–a class with autistic students," Ms. Semm answered, "I think it would be inappropriate and unsafe." [R 364]. Because the students placed in a 6:1:1 class generally need intensive behavior support, Ms. Semm stated that A.D. would be:

> "[at] a huge risk, because these are students that, by the nature of their diagnosis, do not have social awareness. They do not understand what things are going to hurt other people, and they have a lot of impulsive behaviors. And the combination of that and—and [A.D.] is a disastrous one. Even without any intent of harming [A.D.], they could easily do so. They could easily be attracted to wanting to–I do not know. There are certain textures that I have had many students that like–they like to feel, and they like. If they decided they wanted to feel the texture of his G-J tube, and they ended up pulling it out, or—I mean, there's so many things that could happen, it is honestly frightening to think of the risk that [A.D.] would be in."

[R 365-366].

Finally, DOE's proposed 6:1:1 setting is not academically appropriate for A.D. Ms. Semm testified that in a 6:1:1 setting, "there's typically a lot of echolalia, which is noncommunicative, repetitive speech" which is "really detrimental to [A.D.] because we are trying to teach him the opposite of that. We're working really hard to teach [A.D.] how to use core vocabulary words to be able to express things that he wants, to say what he wants, what he wants to stop, if he wants music or an activity to continue, if he wants more of something." Ms. Semm also testified that the noisy environment would make A.D. "really shut down…The effect on his academic progress and his ability to even remain attentive and responsive to the environment and not just shut down would be significantly impaired, in addition to his safety." [R 364-R 368].

17

**POINT II.  EVEN IF A.D.'S IEP PROVIDED A FAPE, DOE DID NOT MEET ITS BURDEN TO ESTABLISH THAT THE PROPOSED SCHOOL LOCATION COULD IMPLEMENT THE IEP**

The school district must establish that the proposed school placement can implement the child's IEP. *D.C.*, 160 F. Supp. 3d at 627; N.Y. Educ. Law § 4402(1)(b)(1). Because the testimony of Dana Miranda, the assistant principal at P.S. 66, does not satisfy this burden, it was an error for IHO Farago and SRO Hauge to find that P.S. 66 was an appropriate placement for A.D.

A.D.'s March 2021 IEP requires him to have 17 hours a week of related services delivered in one-hour blocks. [R 21]. A.D. also is required to have 35 periods a week of special education. [R 97]. At iBRAIN, A.D. attended an extended day of school to accommodate these requisite services while reserving sufficient time for A.D. to learn and make educational progress.

In contrast, the proposed school has eight 45-minute periods per day, which is 30 hours per week. [R 316]. This includes lunch, so the actual educational time is about 26 hours weekly. [R 320]. Given that A.D. requires 17 hours a week of services, this leaves about nine hours per week for A.D. to receive his education.

When asked how the proposed school could provide the 17 hours of services and also the 35 periods of instructional time within a typical school day, Ms. Miranda, the assistant principal at the proposed school, stated that the service providers "would work it out in their schedule, so that they—to accommodate as best as they could for him." [R 317]. But at other points during the hearing, Ms. Miranda admitted that no other students in the proposed school receive services in a one-hour block [R 313] and that some providers were not on site [R 314-315]. In other words, A.D. would present unique scheduling needs with providers that do not work on-site, and the best the DOE could do was say that they were confident that these off-site service providers, who are likely contracted out and are not DOE employees, would accommodate A.D.'s IEP "as best as they could." [R 317]. Ms. Miranda has no way of knowing that and is merely speculating that A.D.'s

IEP could be accommodated. Speculation, however, does not satisfy the district's burden of showing that the IEP would be implemented.

Accordingly, even if the DOE's IEP did provide A.D. with a FAPE (which it did not), the DOE has not met its burden of proving that the proposed school location would have been able to implement A.D.'s IEP.

### POINT III.  iBRAIN WAS AN APPROPRIATE PLACEMENT FOR A.D., AND THE BALANCE OF EQUITIES FAVOR THE PARENTS

IHO Farago correctly found that Plaintiff-Parent Mason satisfied Prong II and Prong III of the *Burlington/Carter* test because she demonstrated iBRAIN was an appropriate unilateral placement for A.D. during the 2021-2022 SY and that the equities favor her claims. [R 46-R 48]. SRO Hauge did not reach these points. IHO Farago's finding should be sustained as both the record and the applicable law supports it.

The New York City DOE did not provide plaintiff-student A.D. with a FAPE for the 2021-2022 school year. This is evidenced by the IEP's failure to account for A.D.'s health management needs, the inappropriate classroom placement, and the lack of an extended school day. As a result, the Court should order the DOE to fund A.D.'s placement at iBRAIN for the 2021-2022 school year, as the IHO found that this placement was appropriate and the equitable considerations weighed in favor of the Parent-Plaintiff. Moreover, the Court should order the DOE to fund A.D.'s related services, including physical therapy, occupational therapy, and speech-language therapy, as well as any other services that may be necessary for A.D. to access his education. The Court should also order the DOE to fund any other transportation services that may be needed for A.D. to get to and from iBRAIN. Finally, the Court should order the DOE to provide A.D. with the necessary assistive technology to ensure he can access the curriculum at iBRAIN. This should include the hardware and software needed to make the technology work and any additional training

or instruction necessary to ensure A.D. can use it. The Court should also order the DOE to provide regular check-ins with A.D. and his parents to ensure that the technology and instruction are meeting his needs. These check-ins should be conducted by a qualified professional and should include an assessment of A.D.'s progress and an evaluation of the effectiveness of the technology and instruction.

## **CONCLUSION**

Considering the preceding, Plaintiffs have shown that defendant DOE did not offer Plaintiff A.D. a FAPE, that iBRAIN was an appropriate placement for A.D. for the 2021-2022 SY, and that the balance of equities favored the parents. Summary judgment for the plaintiffs should be entered.

Plaintiff asks this Court to enter an Order: (1) reversing SRO Hauge's finding that the DOE provided A.D. with a FAPE for the 2021-2022 SY; (2) finding iBRAIN an appropriate placement for A.D. during the 2021-2022 SY; (3) directing DOE to fund A.D.'s placement at iBRAIN during the 2021-2022 SY in accordance with the tuition and transportation contract executed by the Parent. In the alternative, Plaintiff respectfully requests an Order directing DOE to fund A.D.'s placement for the 2021-2022 SY at iBRAIN, as the IHO found iBRAIN to be appropriate and that the equitable considerations weighed in favor of the Parent.


Dated:  March 13, 2023
     New York, New York


     Respectfully submitted,


     /s/_____
     Daniela Jampel (DJ-0925)
     *Attorneys for the Plaintiff(s)*
     Brain Injury Rights Group, Ltd.
     300 East 95th Street, Suite 130
     New York, New York 10128
     daniela@pabilaw.org