UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

CAROLYN MASON, individually and on behalf
of A.D., a minor child,

             Plaintiff,

    -v-                                 No.  22-CV-09336-LTS-KHP

MELISSA AVILES-RAMOS[1]
and the NEW YORK CITY
DEPARTMENT OF EDUCATION,

             Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Carolyn Mason ("Plaintiff" or "Mason"), the mother of A.D., a child

with traumatic brain injury, brings this case individually and on behalf of A.D. under the

individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 <u>et</u> <u>seq.</u> (the

"IDEA").  Mason appeals an administrative determination that Defendants Melissa Aviles-

Ramos and the New York City Department of Education (the "DOE," and collectively,

"Defendants") provided A.D. with a free appropriate public education (a "FAPE") during the

---

[1]     Under Rule 25(d) of the Federal Rules of Civil Procedure, when a "public officer who is a party in an official capacity" ceases to hold office, their successor "is automatically substituted as a party."  Because David Banks is no longer Chancellor of the New York City Schools, the Clerk of Court is respectfully directed to update the caption on the Court records to substitute Melissa Aviles-Ramos, his successor, as a party.

MASON – CROSS-MSJS         SEPTEMBER 30, 2025

2021-2022 school year as required by the IDEA.  This Court has jurisdiction of this action under 28 U.S.C. section 1331 and 20 U.S.C. section 1415(i)(2)(A).

Plaintiff unilaterally placed A.D. in a non-public school, International Institute for the Brain ("iBRAIN"), for the 2021-2022 school year and sought reimbursement for his tuition from the DOE.  Plaintiff's administrative due process complaint asserted substantive deficiencies in the DOE's individualized education program ("IEP") and contested the DOE's proposed public-school placement for A.D.  Following an administrative hearing, the Impartial Hearing Officer ("IHO") found that the DOE had offered A.D. a FAPE and consequently denied reimbursement for non-public school tuition.  Plaintiff petitioned for further review by a State Review Officer ("SRO") of the New York State Education Department's Office of State Review, who upheld the IHO's decision.  Plaintiff subsequently filed this complaint seeking review and reversal of the SRO's determination.

The parties have each moved for summary judgment.  (See docket entry nos. 22 ("Plaintiff's Motion for Summary Judgment"), 25 ("Defendants' Motion for Summary Judgment").)  Plaintiff seeks a declaration that the DOE denied A.D. a FAPE and seeks full reimbursement of the iBRAIN tuition, related services, and special transportation services for the 2021-2022 school year, while Defendants seek dismissal of the case.  The Court has reviewed thoroughly all of the parties' submissions, including the Certified Administrative Record

("CAR"),[2] and for the reasons set forth below, Plaintiff's motion for summary judgment is granted and Defendants' cross-motion is denied.

BACKGROUND

The IDEA's Statutory Framework

The IDEA requires all states receiving federal funds "to provide 'all children with disabilities' a 'free appropriate public education.'"  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting IDEA, 20 U.S.C. § 1412(a)(1)(A)).  It is undisputed that A.D., who has been diagnosed with traumatic brain injury, qualifies as a child with a disability under the IDEA.  Under the IDEA, the appropriate state or local educational agency must develop an IEP for each child with a disability.  20 U.S.C. § 1414(d).  In New York, IEPs are developed by local "Committees on Special Education" ("CSEs") in conjunction with the parents of the disabled student.  N.Y. Educ. L. § 4402(1)(b)(1).

Parents have a right under the IDEA to present a complaint regarding the identification, evaluation, or placement of their child through the IEP process.  20 U.S.C. § 1415(b)(6)(A).  Parents who disagree with the IEP developed by the CSE may unilaterally place their child in a private school, at their own risk, and then seek a retroactive reimbursement of the private school's tuition from the local school district.  Id. § 1412(a)(10)(C).  In seeking

---

[2]     The parties submitted the certified Administrative Record in this case as fifteen separate Electronic Court Filing documents (docket entry nos. 15-1 through 15-14), with a consistent internal pagination that spans across all fifteen documents.  For ease of reference, all citations in this Memorandum Order to the Administrative Record and the exhibits contained therein will follow that internal pagination.

reimbursement, parents have a right to an "impartial due processing hearing" before an IHO.  20 U.S.C. § 1415(f)(1)(A); N.Y. Educ. L. § 4404(1)(a).  The IHO's decision may be appealed by either party to an SRO, who then conducts an independent review of the IHO's factual findings and decision.  20 U.S.C. § 1415(g); N.Y. Educ. L. § 4404(2).  Either party may then challenge the SRO's decision in federal district court; the court is empowered by the IDEA to "receive the records of the administrative proceedings," to "hear additional evidence," and to "grant such relief as the court determines is appropriate" based on "the preponderance of the evidence" presented.  20 U.S.C. § 1415(i)(2)(C); see also N.Y. Educ. L. § 4404(3); Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 247 (2009) (holding that the power of a reviewing district court includes the authority to grant reimbursement when appropriate).

The Factual Record

The following facts are drawn from the Certified Administrative Record, which was submitted to the Court in connection with the instant motion practice, as well as from undisputed portions of the parties' Local Rule 56.1 Statements of Undisputed Material Facts.

A.D. is classified by the DOE as a student with a traumatic brain injury (CAR at R527 (at R527-64, "DOE IEP")) and was 12 years old when the 2021-2022 school year began. (Id.)  Because of his traumatic brain injury, A.D. has complex medical needs.  He is non-ambulatory, legally blind, has epilepsy, and is highly sensitive to noise.  A.D. also has life-threatening, anaphylactic, airborne allergies to fish, eggs, and sweet peas, as well as a severe contact allergy to latex.  (CAR at R508-09.)  A.D.'s mother does not cook seafood due to A.D.'s allergies and keeps their home windows sealed airtight to prevent allergen cross-contamination from neighbors.  (Id. at R333.)  Because he is nonverbal, A.D. relies on assistive technology and

alternative devices to communicate. (DOE IEP at R537-38.) A.D. has attended iBRAIN since the 2018-2019 school year but was homeschooled during the 2020-2021 school year due to medical complications and risk of COVID-19. (Docket entry no. 27 ("Def. 56.1 St.") ¶ 7; CAR at R333.) While homeschooled, he was under constant supervision by his parents and paraprofessionals assigned by iBRAIN to assist with remote learning. (CAR at R333.)

<u>The March 23, 2021 CSE Meeting and Resulting IEP</u>

The CSE met to develop an IEP for A.D. for the 2021-2022 school year on March 23, 2021. (Def. 56.1 St. ¶ 10.) The CSE was comprised of Jessica Diaz, a Special Education Teacher; Carolyn Mason, A.D's mother; Shannon McCabe, a District Representative; Tiffany Semm, the iBRAIN Director of Special Education; and William Frazier, a Parent Advocate. (CAR at R290 (at R241-R395, "Hr'g Tr.").)

When formulating the DOE IEP, the CSE had access to a variety of information from iBRAIN, including iBRAIN's teacher and related services report, a quarterly progress report, and a report containing assistive technology information. (CAR at R465 (at R463-68, affidavit of school psychologist and District Representative Shannon McCabe ("McCabe Aff.")), R527.) It is also undisputed that the CSE had access to A.D.'s iBRAIN IEP from the 2020-2021 school year (CAR at R492 (at R492-526, "iBRAIN IEP"). (See, e.g., CAR at R18-19 (at R5-26, "SRO Dec.") ("[M]ost, if not all, of the information about the student contained in the March 2021 IEP . . . was carried over from the March 2021 iBrain IEP."); Def. 56.1 St. ¶¶ 63-64; docket entry no. 26 ("Def. Mem.") at 8-9.)

After considering these materials and input from the CSE participants, the CSE developed a DOE IEP recommending that A.D. be placed in a special education class with a ratio

of up to six students to one special education teacher and one classroom paraprofessional (a "6:1+1 class").  (Def. 56.1 St. ¶ 12.)  The DOE IEP also included numerous accommodations that appear to have been taken nearly word-for-word from the iBRAIN IEP, as the SRO Decision acknowledged.  (SRO Dec. at 19.)  For example, both IEPs provided A.D. with a full-time individual school nurse and an individual health paraprofessional to assist with A.D.'s feeding, ambulation, and safety needs.  (iBRAIN IEP at R521; DOE IEP at R553-54.)  Both IEPs recommended thirty-five class sessions per week plus seventeen hours of related services.  (iBRAIN IEP at R524-25; DOE IEP at R556.)[3]  Both documents identified the need for a highly structured, non-distracting environment with reduced lighting and noise.  (iBRAIN IEP at R505-06; DOE IEP at R541.)  And both IEPs identified training for school staff, including two-person transfer training, seizure safety training, assistive technology training, vision education training, G/J tube training, and allergy safety and awareness training.  (iBRAIN IEP at R525; DOE IEP at R557.)

One area where the iBRAIN IEP and DOE IEP diverged was in their treatment of A.D.'s allergies.  The iBRAIN IEP identified A.D.'s allergies with specificity, stating that he had "food allergies (airborne for fish and eggs, sweet peas) and latex allergies."  (iBRAIN IEP at R508-09.)  It also laid out five specific interventions designed to accommodate allergic reactions and noted that he has an EpiPen to treat reactions to those allergens.  (Id.)  The iBRAIN IEP also

---

[3]    This included three 60-minute sessions per week of individual occupational therapy, five 60-minute sessions per week of physical therapy, five 60-minute sessions per week of individual speech-language therapy, three 60-minute sessions per week of individual vision education services, and one 60-minute session per week of assistive technology services.  (DOE IEP at R97-98.)

references the fact that A.D.'s exposure to these allergens would trigger anaphylactic allergic reactions.  (Id.)  Anaphylaxis is a "severe, systemic hypersensitivity reaction that is rapid in onset and characterized by life-threatening airway, breathing, and/or circulatory problems."  Laurent L. Reber et al., The Pathophysiology of Anaphylaxis, J. Allergy Clinical Immunology, Aug. 2017, at 1.

Unlike the iBRAIN IEP, the DOE IEP did not explicitly recognize that A.D. had allergies, nor did it mention his specific allergens, their transmission modalities, anaphylaxis or any other aspect of their severity.  In briefing submitted to this Court, the DOE admits that it "was aware of" A.D.'s allergies and states that it intended to accommodate them.  (Docket entry no. 33 ("Def. Reply") at 6.)  The DOE IEP, however, did little to document that awareness, as its only reference to allergies was the listing of an "allergy safety and awareness training" to be conducted "annually and with new equipment."  (DOE IEP at R557.)  The DOE also prepared a separate Nursing Referral Form for A.D.  (CAR at R461 (at R461-62, "Nursing Referral Form")).  The Nursing Referral Form stated that A.D. has "significant airborne allergies requiring 24/7 care," but it did not state what his specific allergens were.  (Nursing Referral Form at R461.)  The Nursing Referral Form also listed an "Epi-pen for anaphylaxis to various allergens" as one of A.D.'s medications.  (Id.)  In an affidavit the DOE submitted as an impartial hearing exhibit, the DOE's District Representative stated that the March 21, 2021 CSE "relied on" the Nursing Referral Form when "developing the [DOE] IEP."  (McCabe Aff. at R456.)  Despite this, however, the IEP did not reference the Nursing Referral Form in any way.  And neither the DOE IEP nor the Nursing Referral Form mentioned any accommodations that the DOE would implement to prevent A.D. from experiencing allergic reactions.

Plaintiff's Response to the May 2020-2021 IEP

In a final notice of recommendation dated March 24, 2021, the DOE recommended a placement for A.D. at K396, a District 75 public school in New York City, to implement the IEP.  (CAR at R565, R569).  On June 23, 2021, Plaintiff informed the DOE that she rejected the program offered in the IEP and intended to unilaterally re-enroll A.D. at iBRAIN for the 2021-2022 school year.  (CAR at R581).  A few weeks later, Plaintiff submitted a Due Process Complaint ("the Complaint") alleging that the district denied A.D. a FAPE for the 2021-2022 extended school year.  (Def. 56.1 St. ¶ 20.)  The Complaint asserted that the DOE failed to (1) create an appropriate IEP designed to meet A.D.'s health management needs; (2) recommend an appropriate classroom grouping; and (3) propose a school placement that could accommodate all the weekly services mandated in the IEP.  (CAR R476.)  Shortly thereafter, Plaintiff signed a contract with iBRAIN enrolling A.D. for the 2021-2022 school year. (CAR at R595.)

Proceedings Before the IHO

The IHO, John Farago, held three separate hearings, on November 22, 2021, January 24, 2022, and March 15, 2022.  (CAR at R28 (at R28-51, "IHO Dec.").)  Four individuals testified before the IHO, and seventeen exhibits were entered into the record.  (IHO Dec. at R50.)  After considering the record and testimony, IHO Farago issued a Finding of Fact and Decision on April 23, 2022 that found that the DOE had offered A.D. a FAPE for the 2021-2022 school year.  (Id. at R48).

As relevant here, the IHO addressed Plaintiff's concerns regarding A.D.'s severe allergies as part of A.D.'s broader set of health management needs.  (Id. at R45.)  The IHO found

that "the district was well aware of the student's myriad and extremely serious health management needs" but held that the DOE IEP adequately addressed them.  (Id. at R44.)  The IHO rejected Plaintiff's argument that the DOE IEP substantively denied A.D. a FAPE by failing to list and accommodate A.D.'s allergies, as the IHO concluded that "the record does not support a finding that the district, at the time it developed the IEP under review here, had information to support inclusion of the student's specific allergies on the IEP it drafted."  (Id. at R45 note vi.) Nonetheless, the IHO believed that this information "belong[ed], prospectively, in the IEP" (id.) and ordered the DOE to reconvene its CSE to "amend the student's IEP to provide further detail" about A.D.'s medical and health needs, "including explicitly noting the student's [a]llergies on the IEP" (id. at R48).

Although the IHO ruled against Plaintiff based on the appropriateness of the DOE IEP, the IHO also found that the parent's proposed unilateral placement at iBRAIN was appropriate and reasonably calculated to provide a FAPE and that equitable considerations weighed in favor of tuition reimbursement for Plaintiff.  (IHO. Dec. at R48.)

The SRO's Decision on Appeal

Plaintiff appealed the IHO's decision to SRO Carol Hauge, who upheld the IHO's FAPE finding in a state review decision dated July 1, 2022.  (SRO Dec. at R5.)  The SRO acknowledged that the DOE had access to the iBRAIN IEP when it convened the CSE.  (Id. at R18 ("[M]ost, if not all, of the information about the student contained in the March 2021 IEP . . . was carried over from the March 2021 iBrain IEP.").)  She also explained that "[s]ome of the health concerns identified in the March 2021 iBrain IEP were noted in detail on the [DOE] IEP," but she acknowledged that the DOE IEP "did not identify the student's allergies" (id. at

R19), even though "the student's allergies were [] presented to the March 2021 CSE" when it convened to create A.D.'s IEP (id. at R21). The SRO noted that the IHO contrary conclusion "that the student's allergies were not presented to the March 2021 CSE at the time of review" was erroneous. (Id. at R21.) However, in the SRO's view, the DOE IEP did not need to mention those allergies because it provided A.D. with a 1:1 paraprofessional and a 1:1 nurse. (Id. at R19.) She also found that the Nursing Referral Form showed that it was "clear that the district was aware of the student's airborne allergies." (Id. at R21.) Finally, she relied on impartial hearing testimony by K396's assistant principal to conclude that there was no indication that "the assigned school would have been incapable of implementing the March 2021 IEP." (Id. at R25.) On these bases, the SRO upheld the IHO's determination that the DOE IEP was reasonably calculated to provide A.D. a FAPE.

Because the SRO found that the hearing record supported the IHO's finding that the DOE IEP was reasonably calculated to provide A.D. with FAPE, she declined to make any determinations regarding the appropriateness of iBRAIN and the balance of equities. (Id. at R25-26.)

DISCUSSION

Legal Standard

The stated purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C § 1400(d)(1)(A). In light of this goal, the Second Circuit has held that "States have an affirmative obligation to provide a basic floor of opportunity for all children with disabilities," which includes "an education 'likely

to produce progress, not regression,' and one that 'affords the student with an opportunity greater than mere trivial advancement.'" T.K. v. N.Y.C. Dep't of Educ., 810 F.3d 869, 875 (2d Cir. 2016) (internal modifications omitted); see also Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 391 (2017).

        The IEP is the "centerpiece" of the IDEA. Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002). When formulating an IEP, the CSE must consider the child's academic achievement and learning characteristics, social and physical development, and managerial or behavioral needs. Gagliardo, 489 F.3d at 107-08. An IEP must be "reasonably calculated to enable the child to receive educational benefits." Frank G. v. Bd. of Educ. Of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006) (internal quotation marks omitted).

        If an IEP is deficient, parents may unilaterally reject the IEP's recommended placement in favor of sending their child to a private school and thereafter seek reimbursement of tuition from the State. T.K., 810 F.3d at 875; see also 20 U.S.C. § 1412(a)(10)(C). Courts use the three-part Burlington/Carter test to determine whether parents are entitled to reimbursement for a unilateral placement. See Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Sch. Comm. Of the Town of Burlington v. Dep't of Educ., 471 U.S. 359 (1985). Under that test, parents are entitled to reimbursement if: (1) the district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) the equities favor reimbursement. See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014).

        Under the first prong of the Burlington/Carter test, the reviewing court determines whether the IEP is procedurally adequate, meaning the State complied with the procedures set

forth by the IDEA, and whether the IEP is substantively adequate, which means that the school district's proposed educational program is "reasonably calculated to enable the child to receive educational benefits."  R.C. ex rel. M.C. v. Byram Hills Sch. Dist., 906 F. Supp. 2d 256, 267-68 (S.D.N.Y. 2012) (citation omitted).  For the second prong, courts determine whether the parent's chosen non-public school program is reasonably calculated to enable the child to received educational benefits.  See Frank G., 459 F.3d at 364.  Finally, in evaluating the equities prong, courts consider factors such as the parties' compliance or noncompliance with applicable state and federal regulations, the reasonableness of their respective positions, and other equitable considerations.  Town of Burlington v. Dep't of Educ. for Com. of Mass., 736 F.2d 773, 801-02 (1st Cir. 1984).  In New York, the DOE bears the burden of establishing the validity of the IEP at a due process hearing, while the parents bear the burden of establishing that the unilateral private placement was appropriate.  T.K., 810 F.3d at 875; R.E., 694 F.3d at 184; see also N.Y. Educ. Law § 4404(1)(c).

Standard of Review and Administrative Deference

A court reviewing the decisions of an IHO and SRO "must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence.'"  Gagliardo 489 F.3d at 112 (citation omitted).  This review, however, "is by no means an invitation to courts to substitute their own notions of sound educational policy for those of the school authorities they review."  Id. at 113 (citation omitted).  Rather, "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed."  Id. (internal quotation marks omitted).  Reviewing courts "are expected to give 'due weight' to [state administrative] proceedings" because "the judiciary generally lack[s] the

specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy."  M.S. v. Yonkers Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000) (citations omitted).

The district court need not, however, defer to administrative determinations that are not "grounded in thorough and logical reasoning," and the court's review should involve "the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." M.H. v. N.Y.C Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).  Issues outside of educational issues, including medical needs, are not entitled to particular deference.  See GB v. New York City Dep't of Educ., 145 F. Supp. 3d 230, 253 (S.D.N.Y. 2015).

Application

Prong I of the Burlington/Carter Test

On appeal to this Court, Plaintiff argues that the DOE IEP substantively deprived A.D. of a FAPE in three ways: (1) by failing to identify and accommodate A.D.'s life-threatening airborne allergies; (2) by placing him with an inappropriate peer group; and (3) by placing him at a school that does not offer the extended school day needed to implement his IEP. (See generally docket entry no. 23 ("Pl. Mem.").)  Because the Court finds that Plaintiff's first claim regarding the IEP's omission of A.D.'s specific life-threatening airborne allergies is dispositive, the Court addresses only that issue.  Having reviewed the administrative record, the Court reverses the SRO's decision and concludes that the DOE IEP deprived A.D. of a FAPE for the 2021-2022 school year.

For an IEP to be substantively adequate under the IDEA, it must afford a child "meaningful access to education based on her individual needs."  Fry v. Napoleon Cnty. Sch., 580 U.S. 154, 170 (2017) (internal citations omitted).  In the case of students with medical needs, "some infirmities will likely render disabled children more vulnerable to injury from certain conditions than their non-disabled peers, therefore requiring special accommodations. . . ." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 93 (2d Cir. 2005). Because the IDEA was intended to "open the door of public education," Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 192 (1982), the Supreme Court has held that school districts must accommodate students' severe medical needs when failure to do so would deprive them of "meaningful access to the public schools."  See Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F., 526 U.S. 66, 77-79 (1999).

Neither the parties nor the Court's own research have disclosed any decisions in this Circuit addressing the precise issue presented here: the sufficiency of a school district's IEP that does not mention or specify a method for accommodating a student's life-threatening, airborne allergies.  The cases the parties presented in their briefings are not entirely apposite. Plaintiff's submissions cite D.C. and M.O. (Pl. Mem. at 11-12), both of which explain that, when a child's IEP specifies that they have an airborne seafood allergy requiring a seafood-free environment, placing the child in a school that is not seafood-free deprives them of a FAPE.  See D.C. ex rel. E.B. v. New York City Dep't of Educ., 950 F. Supp. 2d 494 (S.D.N.Y. 2013); M.O. v. New York City Dep't of Educ., 793 F.3d 236 (2d Cir. 2015) (per curiam).  In D.C. and M.O., the IEPs properly identified and provided for accommodation of the students' airborne allergies, but the school was incapable of implementing that IEP.  In A.D.'s case, however, the critical

question is an antecedent one: whether his IEP must specify which allergy needs will require accommodation in the first place.  L.K., which is cited by Defendants and the SRO, is also factually distinguishable.  See L.K. v. Dep't of Educ. of the City of New York, No. 09-CV-2266-RMM-LB, 2011 WL 127063 (E.D.N.Y. Jan. 13, 2011).  The L.K. court found that a school district's failure to include information about L.K.'s citrus allergy did not constitute denial of a FAPE because the allergy had been specified in an earlier IEP and his classroom instructors were aware of his sensitivity to citrus.  Id. at *9.  That case stands on different ground from A.D.'s, however, because there is no indication that L.K.'s allergy was life-threatening or airborne, nor is there any basis in the record for presuming familiarity of K396 staff with the specifics of A.D.'s allergies and allergy-related needs.

The case most analogous to A.D.'s is GB, a case that does not address allergy-related accommodations at all.  In that case, a student had several serious medical conditions, including a seizure disorder and Pediatric Acquired Neurological Disorder Associated with Strep ("PANDAS").  GB, 145 F. Supp. 3d at 237.  At issue in GB was whether the IEP's failure to accommodate the student's medical needs resulted in a substantive denial of a FAPE.  In analyzing this question, the GB court relied on three essential facts.  First, the record showed that the student had serious medical needs and faced substantial risks if those needs were not accommodated.  To avoid seizures, the student required a temperature-controlled environment and needed to remain well-hydrated, and to avoid a risk of PANDAS reemergence, school staff needed to carefully monitor his strep exposure.  Id. at 253.  Second, the school district was aware of the student's medical needs and the need to accommodate them at the time when it created his IEP.  Id. ("[T]he Parents provided the CSE with considerable documentation about his health

issues.") And third, the IEP failed to accommodate those medical needs. While the IEP in <u>GB</u> identified the student's medical conditions, it "contain[ed] no instructions for the public school staff about the need to control [his] environment, keep him hydrated, and reduce the risk of exposing him to strep in the classroom." <u>Id.</u>

In light of the "deficiencies in the IEP concerning [the student's] health requirements," the <u>GB</u> court found that his IEP was not reasonably calculated to enable him to make adequate educational progress as required under the IDEA: "If [the student] begins to suffer from seizures again, or develops PANDAS symptoms, that will constitute regression, not a progression, in his educational attainment." <u>Id.</u> at 254. Because the school district knew about the student's serious medical needs yet failed to accommodate them in his IEP, the <u>GB</u> court concluded that the "IEP's description of [his] medical issues" was so deficient that it substantively denied him a FAPE, and it held that the SRO's contrary conclusion was "manifestly erroneous." <u>Id.</u> at 252.

The three facts that were determinative in <u>GB</u> are also present in A.D.'s case. First, there is no dispute that A.D. has serious medical needs and that he cannot attend school without accommodations for those needs. As relevant here, he has anaphylactic airborne allergies to seafood, eggs, and sweet peas. (<u>See</u> iBRAIN IEP at R508.) Second, the DOE admits that it was aware of A.D.'s allergies when it formulated his IEP. (Def. Reply at 6.) Moreover, it is undisputed that the DOE possessed documentation of A.D.'s allergies when it convened the March 2021 CSE, including the iBRAIN IEP. (SRO Dec. at R18, R21.) The iBRAIN IEP identified and provided for accommodation of A.D.'s life-threatening airborne allergies to seafood, eggs, and sweet peas, as well as a life-threatening contact allergy to latex. (iBRAIN

IEP at R508-09.)  That Defendants possessed this document and several others when convening the March 2021 CSE indicates they were on notice that they were obligated under the IDEA to create an IEP that accommodated A.D.'s allergies.  See J.L. on behalf of J.P. v. New York City Dep't of Educ., No. 17-CV-7150-DLC, 2024 WL 2700563, at *1 (S.D.N.Y. May 24, 2024); Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730, 732 (2d Cir. 2007).

As for the third factor laid out in GB, the Court finds that the "IEP's description of [A.D.]'s medical issues" is even more manifestly deficient than the IEP at issue in GB.  See GB, 145 F. Supp. 3d at 252.  In GB, the IEP identified the student's medical needs that posed a safety risk but failed to accommodate them.  Id.  A.D.'s DOE IEP, however, did not even identify his allergies, much less accommodate them.  The DOE IEP's sole reference to A.D.'s allergies consisted of a section stating that "staff" would annually receive "allergy safety and awareness training."  (DOE IEP at R557.)  The DOE IEP did not even affirmatively state that A.D. had allergies, and it certainly did not identify which specific airborne allergens would trigger life-threatening anaphylactic allergic reactions.  Nor did it outline any sort of accommodations that would ensure that A.D. avoided exposure to those allergens or could safely attend school amidst the risk of exposure to those allergens.

These deficiencies in A.D.'s IEP denied him a FAPE.  A.D. cannot achieve "meaningful access to education" if he cannot safely attend school.  Fry, 580 U.S. at 170; see also A.S. v. Trumbull Bd. of Educ., 414 F. Supp. 2d 152, 178 (D. Conn. 2006) (finding that if an educational program "threatened [students'] health in a manner undermining their ability to learn, such a placement would deny the children the benefits that the IDEA guarantees").  After reviewing the information that the DOE possessed when convening the March 2021 CSE, the

MASON – CROSS-MSJS                SEPTEMBER 30, 2025

Court finds that A.D. could not safely attend school unless his educational program, at a minimum, identified his life-threatening, airborne allergies and provided accommodations designed to manage his risk of exposure to those allergens. Though the DOE admits that it was aware of this risk (Def. Reply at 6) and that it possessed documentation of the risk when developing A.D.'s IEP (e.g., McCabe Aff. at R465), the DOE IEP did not state that A.D. had airborne allergies, much less did it outline any plan to reasonably accommodate them. These deficiencies would expose A.D. to a serious risk of life-threatening allergic reactions at school, which would cause A.D. to experience a "regression, not a progression, in his educational attainment." See GB, 145 F. Supp. 3d at 254. Accordingly, his IEP was not reasonably calculated to enable him to achieve a meaningful educational benefit, and it substantively denied him a FAPE. Frank G. 459 F.3d at 363. The first Burlington/Carter factor therefore favors Plaintiff. R.C., 906 F. Supp. 2d at 267-68.

The SRO's contrary decision, that A.D.'s IEP did not need to identify his allergies or accommodate them (SRO Dec. 19), was erroneous.[4] The SRO concluded that the DOE appropriately accommodated A.D.'s allergies by assigning him a full-time 1:1 nurse and creating a Nursing Referral Form and found that the school district was aware of his allergies and was capable of accommodating them. (Id. at R20.) After considering the SRO's reasoning, however,

---

[4]    It is worth noting that the IHO correctly concluded that information about A.D.'s specific allergens "belong[ed], prospectively, in the IEP." (IHO Dec. at R45 note vi.) As the SRO noted, however, the IHO erroneously concluded that the March 2021 CSE lacked sufficient information about A.D.'s allergies to include them in his IEP. (SRO Dec. at R21.)

the Court concludes that the SRO's decision was not supported by a preponderance of the evidence.

The first basis for SRO Hauge's decision was that A.D.'s full-time nurse and the Nursing Referral Form would resolve any deficiencies in A.D.'s IEP and services.  While the SRO acknowledged that medically fragile children must be provided necessary medical services as indicated in their IEPs, SRO Hauge concluded that A.D.'s allergies were not "required to be described in detail in a district IEP."  (Id. at R19-20.)  She reached this decision based on a New York State guidance document which said that "'[d]ue to the frequency of changes to orders for nursing treatment and/or medications, the specific nursing service and/or medication to be provided should not be detailed in the IEP.'"  (Id. (quoting Christopher Suriano, Guidelines for Determining a Student with a Disability's Need for a One-to-One Nurse, N.Y. State Ed. Dep't, 4 (Jan. 2019), https://perma.cc/72U7-3G2X).)

The SRO's reliance on this State guidance was misplaced.  Plaintiff's challenge to the DOE IEP is not that it failed to list the specific medications or nursing services he required for his allergies, but rather that it completely failed to identify his allergies and the need to accommodate them by preventing or responding to life-threatening allergic reactions.  These deficiencies are similar to those at issue in GB, which held that a student's IEP was substantively deficient for failing to identify that the student required a temperature-controlled environment and for failing to create a plan to promptly respond to strep exposure.  GB, 145 F. Supp. 3d at 253.  These sorts of deficiencies are far more fundamental and wide scale than the detailed nursing specifications contemplated by the SRO's cited guidance.  An IEP must include clear information identifying the life-threatening airborne allergies, the risks they pose, and the types

of measures that must be formulated to make the instructional environment safe for the child. And unlike specific nursing services and medications, A.D.'s need to be in an allergen-free environment is not a condition that is likely to require frequent changes to the IEP.

For largely the same reasons, the SRO's reliance on the Nursing Referral Form was misplaced. It is true, as the SRO notes, that the Nursing Referral Form states that A.D. has "significant airborne allergies requiring 24/7 care." (SRO Dec. at R20 (quoting Nursing Referral Form at R462).) But even assuming, arguendo, that the Court may consider the contents of the Nursing Referral Form when evaluating the substantive adequacy of the DOE IEP, the Nursing Referral Form fails to identify the specific allergens that trigger A.D.'s life-threatening reactions, and it does not contain any information about the need to prevent, as opposed to merely treat, anaphylactic airborne allergic reactions. And even if it had contained that necessary information, the DOE IEP does not mention or reference the Nursing Referral Form, and the DOE does not provide any evidence that school staff other than the nurse have access to this form and, thus, knowledge of A.D.'s allergies and the need to accommodate them.

At base, the SRO concluded that the IEP was adequate because "it is clear that the district was aware of the student's airborne allergies and would have addressed them through the 1:1 skilled nursing services." (SRO Dec. at R20.) The fact that the school district was aware of A.D.'s allergies yet failed to identify or provide accommodations for them in the DOE IEP is precisely what constituted a FAPE denial, and the fact that the IEP assigned A.D. a full-time 1:1 nurse does not correct the IEP's deficiencies. Even if a full-time nurse were aware of A.D.'s allergies and prevented him from personally ingesting any allergens, this measure alone would not have been sufficient to ensure that his school environment is adequately safe. As explained

above, A.D.'s allergies are airborne, which means that the IEP was required to contemplate management of allergen exposure risks in his environment, including those introduced by other students.  There is no evidence in the record, and certainly no indication in A.D.'s IEP, that his nurse would have the authority, ability, or expertise to control, for example, what other students bring to school or eat around A.D.  To require his nurse to divide her attention between A.D. and the students and environment around him could pose other risks to his health that would undermine his ability to learn.  See A.S., 414 F. Supp. 2d at 178.

Additionally, after concluding that the IEP did not need to "identify [A.D.]'s allergies" (SRO Dec. at R19), the SRO opined that the DOE was nonetheless capable "of implementing the March 2021 IEP" to "accommodate the student's allergies" (id. at R25).  This conclusion was irrelevant to the central question of whether the DOE IEP denied A.D. a FAPE.  As explained above, the IEP did not state that A.D. had allergies, which itself constituted a denial of a FAPE.  Whether the assigned school could implement the allergy-related accommodations in A.D.'s IEP is therefore irrelevant to the substantive adequacy of his educational program.  Indeed, aside from a general reference to annual allergy safety training, there were no allergies or allergy-related accommodations specified in the IEP.  (DOE IEP at R557.)[5]

---

[5]    Moreover, the SRO improperly considered impartial hearing testimony when concluding that the assigned school could accommodate A.D.'s allergies.  (SRO Dec. at 25.)  The Second Circuit prohibits the use of such "retrospective testimony" when it is proffered to establish that "the school district would have provided additional services beyond those listed in the IEP."  R.E. v. New York City Dep't of Educ., 694 F.3d 167, 185-86 (2d Cir. 2012).  The SRO decision erred by relying on DOE testimony that "materially alter[ed] the written plan" by presenting entirely new accommodations found nowhere in A.D.'s IEP for allergies listed nowhere in A.D.'s IEP.  See id. at 186.

In sum, none of the evidence or sources cited by the SRO alters the Court's conclusion that the DOE IEP failed to identify and accommodate A.D.'s life-threatening airborne allergies and therefore failed to create a reasonably safe environment for him.  This failure constituted denial of a FAPE, and the SRO's contrary conclusion was not supported by a preponderance of the evidence.  The first Burlington/Carter factor thus favors the parents.

<u>Prongs II and III of the Burlington/Carter Test</u>

Having concluded that the DOE IEP and proposed placement failed to provide A.D. with a FAPE, the Court must consider whether the Burlington/Carter test's second prong (adequacy of the private placement) and third prong (balance of equities) favor Plaintiff. Gagliardo, 489 F.3d at 112.  Here, the IHO concluded that these prongs favored the parents, and the SRO did not reach the issue because she concluded that the first prong favored the DOE.

In cases where the SRO did not address a particular prong of the Burlington/Carter analysis, district courts may rely on the IHO's analysis.  See M.H., 685 F.3d at 254-55 (finding that the second and third Burlington/Carter factors supported tuition reimbursement based on the IHO's finding when the SRO did not reach these issues). Accordingly, the Court must determine whether the IHO's decision was supported by a preponderance of the evidence.

With respect to prong II, the IHO determined that iBRAIN provided A.D. with a narrowly tailored, supportive, and specialized program for the 2021–2022 school year, and the DOE does not here contest this conclusion.  "[C]ourts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs."  Frank G., 459 F.3d at 364.  The IHO emphasized

that the school's program for 2021-2022 is substantially similar to the program the student received during the previous year, which was determined to be appropriate for A.D. in a prior impartial hearing.  (IHO Dec. at R46-47.)  As to A.D.'s allergies specifically, the record revealed that iBRAIN enforces strict allergen-management protocols by confining the consumption of potential allergens to a single designated room on campus, which significantly mitigates the risk of airborne exposure.  (Hr'g Tr. at R359.)  In addition, iBRAIN's IEP explicitly lists A.D.'s allergies and details a five-step procedure for mitigating A.D.'s allergy risks, including the development of an emergency care plan.  (iBRAIN IEP at R508-09.)  Based on the Court's independent review of the record, the Court concludes that the IHO's conclusion on prong II was supported by a preponderance of the evidence.  Prong II favors Plaintiff.

The IHO also concluded that the third Burlington/Carter factor favored Plaintiff. Defendants disagree with this conclusion, arguing that the parents did not "take a tour of the proposed site."  (Defs. Mem. at 12.)  In a sworn affidavit, however, Plaintiff testified that she attempted to tour the school on at least two occasions but was turned away each time.  (CAR at R600-01.)  The "record reflects that the family cooperated with the district and acted in good faith," and the IHO's decision to that effect was therefore supported by a preponderance of the evidence.  (IHO Dec. at R48.)  The balance of equities thus favors Plaintiff.

<u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that all three Burlington/Carter factors favor reimbursement for Plaintiff's unilateral placement.  The SRO erred by concluding that the DOE IEP provided A.D. with a FAPE.  The IEP failed to properly identify and

accommodate A.D.'s life-threatening airborne allergies and consequently denied A.D. a FAPE for the 2021-2022 school year.  The IHO's conclusions that iBRAIN, the unilateral alternative placement for that year, would provide A.D. with a FAPE and that the balance of equities favored Plaintiff were supported by a preponderance of the evidence.  Accordingly, Plaintiff's motion for summary judgment is granted, and Defendants' cross-motion for summary judgment is denied.

The DOE is ordered to fully reimburse Plaintiff for the cost of tuition, related services, and special transportation services at the International Institute for the Brain for the 2021-2022 school year.  Any motion for attorneys' fees must be made in accordance with Federal Rule of Civil Procedure 54(d) and must be filed no later than 45 days from the date of this Memorandum Opinion and Order.  This Memorandum Opinion and Order resolves docket entry nos. 22 and 26.  The Clerk of Court is respectfully requested to enter judgment for Plaintiff and close this case.

SO ORDERED.
Dated: New York, New York
         September 30, 2025

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge